UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>               Petitioner,<br><br>v.<br><br>RANDY BLADES, Warden, Idaho Maximum Security Institution,<br><br>               Respondent. | Case No. 1:05-CV-516-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

       The evidentiary hearing on Petitioner's *Atkins* claim in this capital habeas matter has recently concluded. Before the hearing, the Court reserved its final ruling on Petitioner's Motion in Limine, in which he requested an order excluding certain evidence from this proceeding based on allegations that Respondent had violated his constitutional rights and abused the civil discovery process in obtaining the evidence. (Dkt. 173.)

       After considering the parties' briefing, including the supplemental briefing, and the record herein, the Court now denies the Motion.

## BACKGROUND

       In his original written submission, Petitioner argued that his rights under the First and Fourth Amendments were violated because prison officials photocopied his personal correspondence as it went through the prison's mail system and then sent copies to

**MEMORANDUM DECISION AND ORDER - 1**

Respondent's attorneys, who forwarded the copies to their retained mental health expert, Dr. Roger Moore. (Dkt. 154, pp. 3-4.) Petitioner suggested that "suppression" or exclusion of the evidence was a proper remedy for these alleged constitutional violations. (Dkt. 154, p. 6.) At oral argument, however, Petitioner shifted his focus to an argument that Respondent's counsel had committed misconduct by taking the evidence outside of the normal discovery process set forth in the Federal Rules of Civil Procedure. For this supposed misconduct, Petitioner urged the Court to use its "inherent power" to sanction Respondent by excluding the letters and Dr. Moore's opinion, or at least that portion of Dr. Moore's opinion that was based on his review of the letters.

The Court thereafter issued an interim Memorandum Decision and Order, concluding that suppression of the disputed evidence solely as a remedy for alleged constitutional violations would not be appropriate because it would require an unsupported extension of the exclusionary rule to this collateral civil matter. (Dkt. 173, pp. 2-3.) But the Court elected to defer its final ruling on Petitioner's alternative argument that Respondent had abused the discovery process until after Respondent had an opportunity to file a supplement response on that issue, and after the parties had presented evidence at the evidentiary hearing. (Dkt. 173, pp. 4-5.) The Court reserved the right to strike any portion of the evidence if it deemed that course of action to be appropriate. (Dkt. 173, p. 5.)

Respondent has since filed a Supplemental Response, Petitioner has submitted a Reply, and the evidentiary hearing has now concluded. The Court has reviewed the

parties' briefing and is prepared to issue its final ruling.

## STANDARD OF LAW

Petitioner is correct that a district court retains the inherent authority to impose sanctions on parties or their lawyers for misconduct in litigation. *Fink v. Gomez*, 239 F.3d 989, 992-94 (9th Cir. 2001). This power is "both broader and narrower than other means of imposing sanctions," because it can reach a wide range of misconduct but it also requires evidence of "bad faith or willful disobedience of a court's order." *Fink*, 239 F.3d at 992 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46-47 (1991)).

To justify sanctions under a district court's inherent authority, the court must find that a party or lawyer acted in bad faith, or at least engaged in "conduct tantamount to bad faith," which can include "a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink,* 239 F.3d at 994; *accord Gomez v. Vernon*, 255 F.3d 1118, 1133 (9th Cir. 2001).

## DISCUSSION

Respondent contends that because the Idaho Department of Correction has a written policy that allows prison officials to inspect all non-privileged inmate mail, neither Respondent nor his agents violated any of Petitioner's rights by retaining a copy of his personal correspondence as it went through the prison's mail system. Even if this judgment was mistaken, according to Respondent, it was not made in bad faith. The Court is constrained to agree that Petitioner has not made a sufficient showing of bad faith

**MEMORANDUM DECISION AND ORDER - 3**

under the relevant standards to justify sanctioning Respondent by excluding relevant evidence from this proceeding.

In reaching that conclusion, the Court cannot ignore the unique circumstances under which the evidence was obtained. Petitioner is housed within the custody and control of the Warden at the Idaho Maximum Security Institution. Although there is "no iron curtain drawn between the Constitution and the prisons of this country," *Wolff v. Mcdonald*, 418 U.S. 539, 555-56 (1974), a prisoner's rights to free speech and privacy are nevertheless diminished and open to restrictions that have a reasonable relationship to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 90 (1987). It is true, as Respondent asserts, that Petitioner's non-legal mail was already subject to a much higher level of scrutiny than a private citizen's correspondence, and Petitioner concedes that IDOC policy allowing for the inspection of non-privileged mail is supported by the legitimate penological interest of institutional security. (*See* Dkt. 154, p. 4 ("Mr. Pizzuto does not dispute that IDOC's policy of inspecting inmate mail is based on legitimate interest in maintaining security within its institution."))

To be sure, there is a difference between, on the one hand, inspecting mail purely for security purposes and, on the other, directing the institution to make copies of a prisoner's mail and then using those copies to obtain an advantage in litigation with the inmate. There is a clear and legitimate penological interest in the former, while the Court is hard-pressed to find any valid penological interest in the latter. At a minimum, there appears to be a serious question as to whether the Respondent's conduct deprived the

**MEMORANDUM DECISION AND ORDER - 4**

Petitioner of those constitutional protections which he retained despite his incarceration. *See Turner v. Safley*, 482 U.S. 78, 84,(1987).

Assuming, without deciding, that the seizure of the mail and the use of it in litigation violated the Petitioner's constitutional rights, it does not ineluctably follow that counsel for the Respondent acted in bad faith so as to require that the evidence seized – as well as expert opinions based thereon – be excluded at trial. While Petitioner argues that these additional acts were clearly unlawful, there is authority to the contrary. *See, e.g., Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004) (finding no First Amendment violation in photocopying a prisoner's mail because "[w]hat has happened here [reading of the mail] is essentially that agents of the state 'overheard' a damaging admission during the course of their duties"); *Stroud v. United States*, 251 U.S. 15 (1919) (holding that a prisoner's letters seized as evidence based on concerns of safety and security did not violate the Fourth Amendment); *see also United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (finding that prison regulations permit no expectation of privacy in non-legal mail). In any event, Petitioner has not demonstrated that the legal authority is so well-settled in his favor, nor pointed to any other persuasive evidence tending to undermine opposing counsel's assertions that they believed in good faith that their actions were justified, that the Court could find that Respondent's counsel intentionally chose to circumvent the discovery rules or violate Petitioner's rights in order to gain a tactical advantage.

It is for this reason that the present case differs from *Gomez v. Vernon*, 255 F.3d

1181 (9th Cir. 2001), which Petitioner cites in support of his argument. (Dkt. 175, p. 3.)
In *Gomez*, Magistrate Judge Boyle determined that attorneys in the Idaho Attorney General's Office had committed sanctionable misconduct by reading and copying prisoners' legal files, which included attorney-client mail, while defending against a class action lawsuit. *Id* at. 1124-26. The attorneys continued to receive and review confidential documents even after being warned by the Idaho State Bar Counsel that their actions were improper. *Id*. at 1124. Judge Boyle's decision to impose sanctions was upheld on appeal as supported by evidence of bad faith. *Id*. at 1134.

Here, in contrast, Respondent's attorneys (different counsel from those in *Gomez*) were not interfering with Petitioner's *privileged* communications because the mail at issue was not legal correspondence, and they were not informed that they were violating ethics or other rules before going forward. In short, the evidence of bad faith in *Gomez* is lacking in this case; and, the other cases on which Petitioner relies contain similar examples of intentional, repeated, and egregious misconduct that do not exist here. *See, e.g.*, *Fink v. Gomez*, 239 F.3d 989, 992-94 (9th Cir. 2001) (holding that a district court has the authority to impose sanctions when "an attorney has made reckless misstatements law and fact" with an improper purpose); *Greviskes v. Universities Research Association*, 226 F.R.D. 595 (N.D. Ill.) (dismissing plaintiff's cause of action after plaintiff engaged in "deceptive, fraudulent, criminal and inexcusable" conduct).[1]

---

[1] In so holding, the Court does not mean to indicate its approval of counsel's conduct. In the future, counsel will have a much more difficult time arguing that they

**MEMORANDUM DECISION AND ORDER - 6**

Accordingly, the Court concludes that the sanction of excluding relevant evidence from this habeas proceeding is unwarranted. Petitioner's Motion seeking that relief will be denied.

## ORDER

IT IS ORDERED that Petitioner's Motion in Limine (Dkt. 154) is DENIED.

DATED: **January 3, 2011**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

---

acted in good faith, given the Court's suggestion, in this decision, that there is a serious, unresolved issue as to whether seizing an inmate's outgoing mail for use in litigation violates that inmate's constitutional rights.

**MEMORANDUM DECISION AND ORDER - 7**